UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARIAN BRADFORD,
#891157

          Petitioner,

v.

RANDALL HAAS,

          Respondent.
_____/

Case No. 2:16-cv-10798

HON. STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING PETITION FOR WRIT OF
<u>HABEAS CORPUS [1] AND DENYING CERTIFICATE OF APPEALABILITY</u>**

Darian Bradford filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. Mr. Bradford is incarcerated at the Ionia Maximum Correctional Facility in Ionia, Michigan.[1] He challenges his convictions for armed robbery, first-degree home invasion, delivery/manufacture of less than five kilograms of marijuana, and possession of a firearm during the commission of a felony, raising the following claims: (1) the evidence presented by the prosecutor was insufficient to establish guilt beyond a reasonable doubt; (2) his sentence does not comport with applicable law or due process; and (3) defense counsel was ineffective. Respondent, through the Attorney General's Office, has filed an answer in opposition to the petition, arguing that Mr. Bradford's claims are meritless. For the reasons set forth below, the Court denies the petition and denies a certificate of appealability.

---

[1] Mr. Bradford was confined at the Macomb Correctional Facility when he filed his petition, but was transferred to Ionia in November 2016. ECF 10.

## BACKGROUND

Mr. Bradford's convictions arise from a home invasion and robbery at a home on Ilene Street in Detroit. Marcus Davis, a ten-year old resident of the home, testified that on February 15, 2013, he was home with his brother Tyree Stokes, his sister Telease Crooks, and her children Anya, Kamya, and Jaylyn, when someone knocked on the side door. Tyree answered the door and a man walked in pointing a gun at Tyree's head. Marcus ran out the front door and went to a friend's house, where the friend's father called the police. City of Detroit Police Officer Brandolyn Johnson interviewed Marcus that evening. She described him as "hysterical and very frantic." ECF 9-5, PgID 307.

Marcie Passalacqua, a City of Detroit Police Officer, was one of the first responders on the scene. She knocked on the front door, saw it open briefly and then slam shut. Officer Passalacqua testified that she heard glass breaking upstairs and saw a .22 caliber handgun come out of the window. Officer Joshua Christian arrived at around 10:00 p.m. and approached the side door, where he heard someone call for help. He entered the unlocked door and saw a woman and children lying on the floor. He testified that the woman told him "they're upstairs." ECF 9-2, PgID 179. He heard glass breaking on his way upstairs and saw two men standing "unnaturally close to [a] broken window." ECF 9-5, PgID 324–25. Officer Christian collected three .30 caliber rounds from Mr. Bradford's right jacket pocket. Officer Kevin Chub testified that Mr. Bradford had a backpack containing baggies of marijuana, a silver ring with 38 clear stones, $207 in cash, and four social security cards.

2

Officer Jeremy Johnson, Christian's partner, heard glass shattering on the side of the house and saw a man trying to jump out of the window. At trial, he identified that man as the co-defendant and identified Mr. Bradford as the other suspect.

Tyree Stokes and Telease Crooks also testified to their experiences in the home. Tyree described being held at gunpoint while a taller man and a shorter man rummaged through his things and took his PlayStation. Telease described seeing the taller man go through her purse and then walk upstairs. They testified that both men had guns and ran upstairs when they saw police sirens.

Mr. Bradford testified in his own defense. The Michigan Court of Appeals accurately summarized his testimony as follows:

> He testified that he went to the victims' house to purchase marijuana and that Telease invited him into the house. He denied being associated with defendant Bowman, and claimed that Bowman was already at the house when he arrived. He claimed that he and Telease got into an argument over the price of the marijuana, during which one of the children left the house and summoned the police. When the police arrived, he went upstairs because he was scared. He denied participating in any robbery, possessing a gun, or taking any property that did not belong to him. He claimed that the police "planted" evidence on him at the time of his arrest.

*People v. Bowman*, No. 318868, 2015 WL 302761, at *2 (Mich. Ct. App. Jan. 22, 2015).

Mr. Bradford was tried with co-defendant Dwayne Todd Bowman. Following the two-day bench trial, the Court convicted both defendants of two counts of armed robbery, one count each of first-degree home invasion, and one count each of possession of a firearm during the commission of a felony. Mr. Bradford was also convicted of possession with intent to deliver marijuana. The Court sentenced Petitioner to 15 to 30 years imprisonment for his armed-robbery convictions, 10 to 20 years for his home invasion

3

conviction, 1 to 4 years for his marijuana conviction, and a consecutive 2-year prison term for the felony-firearm conviction.

Mr. Bradford filed an appeal of right in the Michigan Court of Appeals, arguing that (1) the evidence presented by the prosecutor was insufficient to establish guilt; (2) his sentence did not comport with the law or due process; and (3) he was denied effective assistance of counsel because trial counsel was not prepared. The Michigan Court of Appeals affirmed the conviction. *Bowman*, 2015 WL 302761. Mr. Bradford filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Bradford*, 498 Mich. 873 (2015). Petitioner then filed the instant petition for habeas relief, raising the same claims presented to the Michigan Court of Appeals.

## STANDARD

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "[T]he 'unreasonable application' prong of [the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413)). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v.*

5

*Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citations omitted).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

## DISCUSSION

I. <u>Sufficiency of the Evidence</u>

Mr. Bradford first asserts that he is entitled to habeas relief because the trial court had insufficient evidence to convict him on the charges of armed robbery and home invasion. Specifically, he argues that his testimony demonstrates that he was not associated with Mr. Bowman, the co-defendant, and was merely in the house to complete a drug transaction with Telease Crooks. Respondent contends that the Michigan Court of Appeals reasonably rejected this claim because there is sufficient evidence to support the convictions.

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis

6

omitted). A federal court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

Under AEDPA, challenges to the sufficiency of the evidence must survive "two layers of deference to groups who might view facts differently" than the habeas court—the factfinder at trial and the state court on appellate review—as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788–89.

A. <u>Armed Robbery</u>

The Michigan Court of Appeals denied relief on this claim, concluding that the evidence was sufficient to support Mr. Bradford's convictions. The Court of Appeals set out the elements of armed robbery as follows:

> In order to establish the elements of armed robbery, MCL 750.529, the prosecutor must prove that:
>
> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.

7

*Bowman*, 2015 WL 302761 at *2. The Court reasoned that, despite Mr. Bradford's testimony that he was not associated with the co-defendant and was merely in the house for a drug transaction with Ms. Stokes, the remainder of the evidence:

> [A]llowed the trial court to infer that defendant Bowman was the shorter man who pointed the gun at the older child, verbally threatened him, and took the PlayStation unit, and that defendant Bradford was the taller gunman who went upstairs. Defendant Bradford's possession of $207 and the social security cards belonging to Telease and her children also allowed the court to infer that he was the gunman who took these items from Telease's purse. Although both defendants maintain that their purported attempt to escape through a broken bedroom window is not evidence of guilt, the trial court was permitted to infer from this evidence that the defendants were attempting to flee the house and evade the police because of their consciousness of guilt.

*Id.*

The Court of Appeals' dispensation of this issue is reasonable. Mr. Bradford challenges the inferences the trial court drew from the testimony presented at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326. The trial court's verdict was reasonable. The evidence presented at trial, viewed in light most favorable to the prosecution, established beyond a reasonable doubt that Mr. Bradford committed armed robbery. Specifically, multiple victims testified to seeing two men arrive in the house with guns and partially covered faces. Telease Crooks testified that both men went through her purse and the shorter man took her brother's PlayStation. When police arrived, the co-defendants were in an upstairs bedroom near a broken window. Mr. Bradford was found with the social security cards from Telease's purse and Mr. Bowman with the PlayStation. In sum, a rational trier of fact could agree with the verdict in this matter and therefore this court may not set it aside.

The Court of Appeals further explained that the evidence was sufficient to support that each defendant committed armed robbery while in the house, in addition to supporting an aiding and abetting theory. The elements of aiding and abetting are:

> "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement."

*People v. Moore*, 470 Mich. 56, 67–68 (2004) (quoting *People v. Carines*, 460 Mich. 750, 768 (1999)). When viewed in the light most favorable to the prosecution, sufficient evidence supported this conviction. As explained by the Court of Appeals, the "testimony established that defendants spoke to each other in the home and that they acted in concert while they were inside the home," and ran upstairs together when the police arrived. *Bowman*, 2015 WL 302761 at *4. The Court of Appeals' analysis and holding are reasonable, therefore habeas relief is not warranted on this claim.

B. <u>Home Invasion</u>

Michigan's home invasion statute provides, in relevant part:

> (2) A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

9

Mich. Comp. Laws § 750.110a (2). The Michigan Court of Appeals concluded that there was sufficient evidence to convict Mr. Bradford of home invasion, reasoning that the victim's testimony established all of the required elements above. Specifically, the fact that one of the men put a pistol to Tyree's head and entered the home without permission established that they entered the dwelling without permission. The testimony that the men threatened the occupants of the home, took the PlayStation, and took items from Telease's purse was sufficient to demonstrate that the men entered with intent to commit robbery and actually committed the robbery. Finally, "in light of the testimony that both men were armed with guns and that Telease, her brother, and Telease's children were all lawfully present in the dwelling when the gunmen entered, the evidence was sufficient to prove both alternative prongs of the third element of first-degree home invasion[.]" *Bowman*, 2015 WL 302761 at *5.

The evidence presented at trial is sufficient to allow a reasonable fact finder to find Mr. Bradford guilty beyond a reasonable doubt. Again, Petitioner seems to take issue with the trial court's weighing of the testimony, but this Court must defer to the trial court's credibility determination. *See* 28 U.S.C. § 2254(e)(1). As such, Mr. Bradford is not entitled to habeas relief on this claim.[2]

II.    Sentencing Guidelines

Mr. Bradford argues that the trial court erred in assessing ten points for offense variable ("OV") 4, serious psychological injury to a victim. Ten points is appropriate if "serious psychological injury requiring professional treatment occurred to a victim." Mich.

---

[2] On April 17, 2017, Mr. Bradford filed a request for an evidentiary hearing, asserting his innocence. ECF 11. Based on the foregoing, this request is also denied.

Comp. Laws § 777.34(1)(a). Mr. Bradford contends that there is nothing in the record to prove that the victims suffered serious psychological injury requiring professional treatment.

This claim is not cognizable on federal habeas review because it is based solely on state law. *See McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Therefore, a claim that the trial court misscored offense variables in determining the state sentencing guidelines is non-cognizable on habeas corpus review. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003).

Mr. Bradford also asserts that his sentence violates federal due process as a result of the scoring error. A sentence may violate federal due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990). To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information. *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). Mr. Bradford makes no such showing here. The record reveals that he had a sentencing hearing before the state trial court with an opportunity to challenge the scoring of the guidelines. In fact, defense counsel contested the scoring of OV 4. Mr. Bradford also presented his sentencing issues to the state appellate courts and was denied relief. Petitioner fails to establish that the trial court relied upon materially false or inaccurate information in imposing his sentences which he had no opportunity to

correct. Consequently, no due process violation occurred and habeas relief is not warranted.

III.  Ineffective Assistance of Counsel

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 690. This "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court's review of counsel's performance must be "highly deferential." *Id.* at 689. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective assistance of counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122–23 (2009).

Here, Mr. Bradford argues that his trial attorney was ineffective because he was unprepared for trial. He points to counsel's following statement, made during the sentencing hearing, as evidence that counsel was unfamiliar with the record to such an extent that his representation was ineffective:

12

> What is unfortunate in this case is that he was diagnosed with ADHD. I don't know what that would have meant in terms of proceeding with this case, but it may have caused me to take a different action with regard to his testifying, if the Court pleases.

ECF 9-7, PgID 477–78. The Michigan Court of Appeals denied relief on this claim, explaining in relevant part:

> The failure to conduct a reasonable investigation can constitute ineffective assistance of counsel. *People v. McGhee,* 268 Mich. App 600, 626; 709 NW2d 595 (2005). However, inadequate investigation or preparation alone does not establish ineffective assistance of counsel. *People v. Caballero,* 184 Mich. App 636, 642; 459 NW2d 80 (1990). A defendant must also show that counsel's inadequate preparation resulted in counsel's ignorance of valuable evidence which would have substantially benefited the defendant. *Id.*
>
> The existing record does not support defendant Bradford's contention that his trial counsel failed to conduct an adequate investigation. Defendant Bradford has offered nothing, beyond his unsupported assertions, indicating that trial counsel's performance was objectively unreasonable for counsel's alleged failure to discover defendant Bradford's ADHD. On this record, defendant Bradford has not established that his trial counsel performed an inadequate or otherwise deficient investigation. Thus, he cannot overcome the presumption that trial counsel's performance was objectively reasonable. Further, defendant Bradford offers nothing, beyond his bald, sweeping assertions, to suggest that counsel's knowledge of his ADHD could have been beneficial at trial. Indeed, defendant Bradford summarily asserts that counsel's alleged ignorance of his ADHD condition "deprived him of possible defenses that could have changed the outcome of the [d]efendant's trial," but he does not explain what defenses counsel could have presented had he been aware of this condition. A defendant bears the burden of establishing the factual predicate for his ineffective assistance claim. *People v. Hoag,* 460 Mich. 1, 6; 594 NW2d 57 (1999). On this record, defendant Bradford cannot satisfy either prong of his ineffective assistance of counsel claim.

*Bowman*, 2015 WL 302761 at *7–8.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's

case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522–23; *Strickland*, 466 U.S. at 691; *Stewart v. Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). Decisions as to what evidence to present and whether to call certain witnesses, however, are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

Here, Mr. Bradford has presented no evidence that counsel's conduct was unreasonable. He asserts generally that counsel's knowledge of his ADHD could have created mitigating circumstances or call into question the admissibility of his statements. This is not sufficient, however, to demonstrate that but for his counsel's lack of preparation, the result of the proceeding would have been different. Mr. Bradford is not entitled to habeas relief on this claim.

## CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to

deserve encouragement to proceed further." *Slack,* 529 U.S. at 484 (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. The Court will therefore deny a certificate of appealability.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Bradford's Petition for Writ of Habeas Corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

This is a final order that closes the case.

**SO ORDERED**.

    s/ Stephen J. Murphy, III
    STEPHEN J. MURPHY, III
    United States District Judge

Dated: November 27, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 27, 2017, by electronic and/or ordinary mail.

    s/David P. Parker
    Case Manager